OPINION OF THE COURT
Marc Finkelstein, J.
In this holdover proceeding, the motion and cross motion sub judice present claims under or related to the Martin Act, General Business Law § 352-eeee, that involve overlapping issues not frequently encountered in Housing Court; some not ever having been addressed directly by any court. Further, the landlord-tenant relationship between petitioner and respondents[1] has been marked by a variety of civil and criminal charges and proceedings which yield little by way of clarification of these Martin Act issues.
An examination of the petition and answer is warranted. The petition, not on a preprinted form, is six pages, with 23 numbered paragraphs and five exhibits attached. A lengthy explanation states in essence that the proceeding was brought because respondents’ “Second Lease” had expired and they rejected the terms and conditions of the “Third Lease” offered by petitioner.[2]
The petition at paragraph 18 alleges the premises is not subject to rent control or rent stabilization (under Rent Stabilization Law § 2520.11),[3] nor are respondents afforded any eviction protection as “nonpurchasing tenants”, because they moved into their apartment after the building became subject to an effective cooperative conversion plan. In other words, respondents have no protections because they were not already in occupancy at the time of the cooperative conversion. Thus, petitioner’s ability to maintain this proceeding for the reasons stated in the petition is clearly grounded on the alleged non-rent-regulated status of the subject apartment. The court will return to this critical issue below.
*368 The answer contains eight defenses and one counterclaim. The first four defenses are jurisdictional. The fifth through seventh involve the substantive claim that respondents are indeed “nonpurchasing tenants” under General Business Law § 352-eeee, and thus entitled to certain protections. The eighth defense and counterclaim allege retaliatory eviction and unspecified damages as a result.
Respondents previously withdrew their fourth defense. Petitioner’s motion-in-chief seeks dismissal of all the remaining defenses and the counterclaim. Subsequently, respondents withdrew their first, second and third defenses. Thus, on the motion-in-chief, the court is asked to determine whether the fifth, sixth, seventh defenses (the General Business Law § 352-eeee claims) and the eighth defense and counterclaim (the retaliatory eviction claims) should be dismissed.[4] Respondents’ cross motion conversely seeks dismissal of the proceeding on the grounds stated in the fifth, sixth, seventh and eighth defenses, and granting of summary judgment on the counterclaim.
The retaliatory eviction claim under Real Property Law § 223-b is addressed first. Respondents claim this proceeding must be dismissed because it was commenced within six months after good-faith complaints to a governmental body regarding health and safety violations. Indeed, respondents did make a number of such complaints. In fact, petitioner claims there is not a single six-month period since respondents took occupancy in February 1992 without a complaint. But petitioner claims the volume, frequency and timing of the complaints,[5] that respondents did not contact petitioner before filing the complaints, and that petitioner responded to each of the complaints when notified, all indicate the complaints were not made in good faith.
Petitioner correctly states that even if respondents’ complaints create a presumption of retaliation, the presumption is rebuttable. It argues it has presented a credible explanation of a nonretaliatory motive which was not disproved by respondents in their papers by a preponderance of the evidence.[6]
Issues of fact abound on the retaliatory eviction claim which must await decision after trial. The motion papers alone are *369 insufficient to support either dismissal of the claim or dismissal of the proceeding and an award of damages based on the claim. Thus, petitioner’s request to dismiss the eighth defense and counterclaim is denied. Respondents’ request to dismiss based on the eighth defense and for summary judgment on the counterclaim is also denied.
Thus, the motion and cross motion are pared down to the fifth, sixth and seventh defenses, all involving provisions of the Martin Act, General Business Law § 352-eeee. Both sides are represented by able counsel and in regard to their Martin Act contentions, the court does not feel that either is so much being disingenuous or guilty of circular reasoning (as each claims), but rather that both are sailing colorable arguments in legally uncharted waters.
If respondents are “nonpurchasing tenants” (as defined in General Business Law § 352-eeee [1] [e]) and thus covered under the Martin Act, they would be entitled to (1) continued occupancy so long as they are not in default of their obligations under their lease or tenancy and, therefore, protection from eviction proceedings based merely on expiration of their tenancy (as provided in General Business Law § 352-eeee [2] [c] [ii]); and (2) although the apartment herein is not subject to ordinary rent regulation, protection from “unconscionable” rental increases (as defined and provided in General Business Law § 352-eeee [2] [c] [iv]).
Thus it would seem logic dictates that the threshold issue is whether respondents are “nonpurchasing tenants” under the Martin Act. If not, this eviction proceeding, based upon the claim in paragraph 18 of the petition that the apartment is not subject to any rent regulation at all, would be maintainable. However, if respondents are “nonpurchasing tenants”, the next issue would be whether petitioner may maintain this proceeding under the allegations of paragraph 18. If, and only if that issue were determined in the affirmative, would the court reach the next issue of whether the “Third Lease” offered to respondents by petitioner contains an unconscionable rent increase. If petitioner is not entitled to maintain this proceeding, it would have to be dismissed and the unconscionable rent increase issue would only be reached in a new proceeding alleging the proper rent regulatory status of the premises.
*370 However, petitioner seeks to stand the above logic completely on its head. Petitioner’s first set of reply papers made scant mention of the presumed threshold issue of whether respondents are “nonpurchasing tenants”. Instead, petitioner went directly to the last issue — unconscionability—first, and argued not only that unconscionability is the threshold issue but also that the court is limited to that issue alone. While continuing to vehemently deny that respondents are “nonpurchasing tenants” under the Martin Act, petitioner nevertheless argued the court is preempted from reaching that issue because respondents have been voluntarily offered a renewal lease with a rent increase which petitioner asserts (and respondents dispute) would not be considered “unconscionable” under the Martin Act. In other words, by virtue of having voluntarily granted respondents one of the benefits of “nonpurchasing tenants” status (i.e, treating them “as if’ they were covered under the Martin Act with regard to the rent increase), petitioner claims to have mooted out a decision on the issue of whether respondents are in fact “nonpurchasing tenants”.
This court disagrees. In this matter, petitioner cannot avoid a decision on the merits as to whether respondents are “non-purchasing tenants” entitled to all appropriate protections under the Martin Act as set forth in General Business Law § 352-eeee. This is because of the allegations petitioner sets forth in its own petition herein, and respondents’ response thereto, and because of prior litigation between the parties involving the same issue.
Paragraph 18 of the petition alleges that respondents are not afforded any eviction protection “because, among other reasons, respondent’s occupancy of the premises commenced after the . building in which the premises is located became subject to an effective cooperative conversion plan and, therefore, were not ‘non-purchasing tenants’ already in occupancy at the time of the conversion.” Respondents clearly and directly contest petitioner’s assertion in this regard. In their sixth defense, inter alia, at paragraph 9, respondents assert “petitioners are not permitted to maintain this proceeding because respondent is a ‘non-purchasing tenant’ * * * and this proceeding violates respondent’s rights to continued occupancy pursuant to the Martin Act, as well as respondent’s rights under the plan and proprietary lease.”
Moreover, in a prior holdover proceeding involving the same premises (Paikoff v Harris, L&T index No. 83897/93, hereinafter the prior proceeding), the petition also claimed the apart *371 ment was not subject to any rent regulation or protection “by reason of having been rented to respondent after said premises were converted to a N.Y. Cooperative Corporation.” Respondent similarly responded that he had the rights of a “nonpurchasing tenant”. The court instructed the same counsel as herein to submit legal memoranda on that exact question.
After respondent’s counsel submitted his memorandum, along with an affirmation from the New York State Attorney-General’s Office which was in complete agreement with respondent’s position (discussed again below), petitioner sought leave to discontinue the proceeding. The court allowed the discontinuance on condition that the proceeding be marked discontinued with prejudice and that costs and reasonable attorney’s fees be paid to respondent.[7]
Thus, petitioner cannot continually place the question of whether respondents have the protected status of “nonpurchasing tenants” in issue by asserting in petitions that they have no such protection because they took occupancy after the cooperative conversion plan became effective, and then, when respondents answer to the contrary, preclude them from a decision on the merits as to said issue by discontinuing the case or by offering them a lease with an allegedly not unconscionable rent increase.
It is both reasonable and understandable that respondents are unwilling to enter into a lease renewal which does not acknowledge their full status as “nonpurchasing tenants”.[8] Respondents should not have to face the possibility of relitigating this issue each time their lease expires and/or each time an eviction proceeding may be commenced against them. Therefore, since petitioners have again squarely placed the “nonpur *372 chasing tenant” issue in the legal arena in this proceeding, the issue is ripe for decision.
Petitioner initially set forth little argument on the issue of whether respondents are “nonpurchasing tenants”, and, therefore, after oral argument the court (as in the prior proceeding) requested submission of a supplemental memorandum on said issue. All the arguments have now been carefully considered and due deliberation has been had thereon.
Initially, respondents argue that the discontinuance with prejudice of the prior proceeding, under the circumstances outlined above, operated as a favorable decision on respondents’ status as “nonpurchasing tenants” and should now be given res judicata and/or collateral estoppel effect. However, this court is unwilling to hold that the marking “discontinued with prejudice” was intended to forever foreclose petitioner from a decision on the merits on the issue of whether respondents are “nonpurchasing tenants” even though they rented their apartment years after the building in which it is located became subject to an effective cooperative conversion plan.
The issue is of considerable interest and significance, with a dearth of case law. Thus, this court will not afford res judicata or collateral estoppel effect to the discontinuance, thereby barring further review, absent a specific indication that it was with prejudice as to the issue of respondents’ “nonpurchasing tenant” status and thus constituted a final decision on that issue. (See, 366 Bomar Co. v Smith, Jackson & Co., 51 AD2d 786 [2d Dept].)
However, since courts generally favor a disposition of the merits (38 Holding Corp. v City of New York, 179 AD2d 486 [1st Dept 1992]), on the merits of the issue at hand, this court finds that respondents are in fact “nonpurchasing tenants” under the Martin Act as set forth in General Business Law § 352-eeee and are therefore entitled to all the rights and protections appurtenant thereto.
There is no dispute as to the facts surrounding respondents’ rental of the subject premises. Mr. Paikoff and Mr. Ross are the sponsors of a noneviction cooperative conversion plan at the subject building. In August 1985, petitioner submitted the plan to the Attorney-General for approval. In April 1986 the Attorney-General accepted the plan for filing and in April 1987 the petitioner, as sponsor, declared the plan effective. At the closing in May 1987, title to the building passed from petitioner to the cooperative corporation and petitioner became the “holder of unsold shares” as to shares allocated to apartments, *373 such as the subject one, which had not been subscribed for and fully paid prior to closing. It was not until almost five years later, in February 1992, that the parties herein entered into their first written lease agreement and respondents took occupancy of the subject apartment where they have remained to date.
Petitioner would have the court adopt the view that where conversion to cooperative ownership occurs pursuant to a non-eviction plan, only tenants already in occupancy (existing tenants) at the time of the conversion meet the definition of “nonpurchasing tenants” and are provided certain protections. However, General Business Law § 352-eeee (1) (e) defines a “nonpurchasing tenant” as: “A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date. A person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant.” (Emphasis added.)
A plain reading of the emphasized portion of the law seems to clearly indicate that the definition of a “nonpurchasing tenant” is not limited only to a person who moved into his or her apartment before the building became subject to a cooperative conversion plan. It seems to also include persons who rent dwelling units, in a building already converted to cooperative ownership, from the sponsor or holder of unsold shares allocated to that apartment. The only exception to affording “non-purchasing tenant” status for persons who rent “subsequent to the effective date” of the conversion plan is persons who sublet units from persons who have purchased the unit under the conversion plan. Thus, since it is without dispute that respondents rented the apartment from the original sponsor and holder of unsold shares to said apartment, they would appear to be nonpurchasing tenants under the plain language of the law.
In further support of this interpretation, respondents present the 1993 affirmation of the then Director of Regulatory Compliance in the Real Estate Financing Bureau of the State of New York Department of Law (Office of Attorney-General Robert Abrams), which was submitted in the prior proceeding on the same issue.[9] The Director states she is familiar with the regulations governing conversion cooperatives and with the *374 Attorney-General’s interpretation and application of the provisions of the General Business Law.
The Director concludes that “a tenant who is already living in a conversion cooperative at the time the plan becomes effective is a non-purchasing tenant. However, the term ‘non-purchasing tenant’ also includes a tenant who rents a vacant unit after the effective date of the plan, as long as the tenant does not sublet the unit from a purchaser under the plan. The position of the Office of the Attorney General is that a sponsor or holder of unsold shares is not a ‘purchaser under the plan.’ Therefore, the position of the Office of the Attorney General is that a tenant who rents a vacant unit after the plan’s effective date from a sponsor or holder of unsold shares is a ‘non-purchasing tenant’ under G.B.L. §352-eeee.” (Emphasis in original.)
The Office of the Attorney-General continues: “This understanding of the meaning of ‘non-purchasing tenant’ makes sense, both as a matter of statutory construction and as a matter of public policy * * * With regard to statutory construction, the plain import of ‘purchaser under the plan’ is someone who purchases shares allocated to an apartment under the conversion plan. This would not include a sponsor * * * Since shares still held by a sponsor are, by definition, ‘unsold’ shares, a sponsor would not be a ‘purchaser under the plan.’ * * * [P]ublic policy likewise supports the Attorney General’s view that the term ‘non-purchasing tenant’ includes tenants who rent from a sponsor after the plan’s effective date * * * a landlord with a building containing six residential units (and therefore ordinarily subject to the Rent Stabilization Law) [as is the exact case herein] can convert the building to a cooperative merely by selling the shares for one of the six apartments. If vacancies occur in the other apartments, the landlord-as-sponsor can rent those apartments free of ordinary rent regulation. The General Business Law treats such tenants as ‘non-purchasing tenants’, precisely to afford these tenants a measure of protection against not-for-cause evictions and unconscionable rent increases, even though they are no longer subject to ordinary rent regulation.”
Petitioner asks the court to adopt a reading of General Business Law § 352-eeee (1) (e) which is different from the plain language reading put forth by respondents and supported by the Attorney-General’s Office in two critical respects. First, there is no doubt that an alternative definition of “nonpurchasing tenant” in the statute is “a person to whom a dwelling unit *375 is rented subsequent to the effective date [of the plan].” (General Business Law § 352-eeee [1] [e].) However, petitioner asks the court to read into the alternative definition as it appears in the statute so that it meets what petitioner claims was the legislative contemplation of limiting the alternative definition to a person to whom a dwelling unit is rented subsequent to the effective date (of the plan) but prior to closing.
Second, there also appears to be no doubt that the second sentence of General Business Law § 352-eeee (1) (e) provides that the only exception to affording “nonpurchasing tenant” status for a person who rents “subsequent to the effective date” of the plan, applies to “[a] person who sublets a dwelling unit from a purchaser under the plan”. (Emphasis added.) However, even though petitioner is clearly the original sponsor and holder of unsold shares to said apartment, it asks this court to rule that it is nevertheless a “purchaser under the plan” and therefore the respondents fall under the exception to affording “nonpurchasing tenant” status and are thus not entitled to protections under the Martin Act.
Petitioner may be correct that the opinions expressed in the affirmation of the Attorney-General’s Director of Regulatory Compliance do not constitute an official Attorney-General Opinion, and, even if they did, are not per se binding upon this court. Interpretation and construction of a statute is a judicial function. However, in the court’s exercise of that function in this case, the opinions expressed by the Attorney-General’s Office, while not dispositive, are an important element to be considered since they directly and precisely address the myriad issues raised herein in regard to “nonpurchasing tenant” status for respondents.
Petitioner is also correct that the opinion of the Attorney-General may not expand the accepted meaning of a statute. However, in this case, the court feels that it is petitioner, not the respondents or the Attorney-General, who seeks to expand the plain language meaning of the statute defining “nonpurchasing tenant” by adding words that are not there {“but prior to closing”) and changing commonly understood definitions (a holder of unsold shares is now a “purchaser under the plan”).
Following the Court of Appeals guidance in Patrolmen’s Benevolent Assn. v City of New York (24 NY2d 983, 985 [1969]), the court feels that if the Legislature had intended “nonpurchasing tenant” status to be limited to a person to whom an apartment is rented subsequent to the effective date of the *376 plan but prior to closing, the legislation “should have contained a provision to that effect.” Likewise, if the Legislature intended that a holder of unsold shares should be considered a “purchaser under the plan”, the legislation “should have contained a provision to that effect.”
The court feels much the same about the arguments concerning General Business Law § 352-eeee (1) (e) as the Supreme Court, Nassau County, felt about a different statute in Kessel v D’Amato (97 Misc 2d 675, 686, mod 72 AD2d 790): “As the statute * * * presently stands, there are no gaps to be filled — no doubts and ambiguities to be cleared — no wrongs to be mitigated. Indeed, there is nothing which has been presented to this court by the petitioners which lends itself to a contrary conclusion.” Finally, by giving the statute herein the plain meaning effect urged by respondent and the New York State Attorney-General, the court adopts the reasoning of the conclusion of the court in Kessel v D'Amato (supra, at 686-687): “A statute standing by itself is not possessed of a thaumaturgic quality, nor is it encircled with a nimbus precluding the questing process. However, when it speaks with total clarity about one thing and is thunderously silent about others, it is entitled to judicial respect as well as decisional restraint.”
As the court has found respondents are “nonpurchasing tenants” and thus protected under the Martin Act, this eviction proceeding, based upon the claims in paragraph 18 of the petition that respondents are not “nonpurchasing tenants” and the apartment is not subject to any rent regulation, cannot be maintained by petitioner. The notice of termination is similarly defective as it states a “not-for-cause” termination based merely on expiration of a month-to-month tenancy, which is prohibited by General Business Law § 352-eeee (2) (c) (ii).
Pursuant to RPAPL 741, respondents are entitled to be adequately and accurately informed as to the factual and legal claims of petitioner regarding the rent regulatory status of the subject premises that they will have to meet and to be enabled to interpose whatever defenses and counterclaims may be available. (Giannini v Stuart, 6 AD2d 418 [1st Dept 1958].)
The mischaracterizations and misstatements of the rent regulatory status herein are basic and substantial and go to the very core of the proceeding. Thus they fail to satisfy the requirements of RPAPL 741. Such mischaracterizations and misstatements render the petition herein fatally defective and require dismissal of the action. (MSG Pomp Corp. v Doe, 185 AD2d 798 [1st Dept 1992]; Caceres v Golden, NYLJ, Mar. 27, *377 1991, at 25, col 4 [App Term, 2d Dept]; Giannini v Stuart, supra.)
Accordingly, that portion of respondents’ cross motion seeking dismissal of this proceeding based upon their Martin Act defenses is granted and the matter is hereby dismissed. As a result, as explained above, the court does not reach the issue of whether the “Third Lease” offered to respondents by petitioner contains an unconscionable rent increase from which respondents are protected under General Business Law § 352-eeee (2) (c) (iv). On that issue itself the parties have presented a number of questions and arguments also not frequently encountered in Housing Court, with some apparently not having been addressed directly by any court. Presumably, the parties can seek rulings on these separate questions and arguments in a new proceeding which alleges the proper rent regulatory status of the subject premises.

. “Petitioner” herein refers to PRS Development Associates, a business owned by Barry Paikoff and Stuart Ross. “Respondents” refers to Emil and Elizabeth Harris, husband and wife, who occupy the premises. No other persons having an interest in the premises are mentioned.

. The termination notice does not offer the same, or any, explanation for terminating the tenancy. It states only that “the owner elects to terminate your month-to-month tenancy” (commonly referred to as a “not-for-cause” termination). As such, had the issue been raised, it might have been subject to attack as an insufficient predicate notice.

. The proper citation appears to be section 2520.11 (l) of the Rent Stabilization Code (9 NYCRR), referring to housing accommodations contained in buildings owned as cooperatives.

. If granted in full, this would presumably leave a trial at which respondents would have no defenses or counterclaims and petitioner would have to prove only its prima facie case.

. As set forth in Levin reply affirmation fifí 53-58; Paikoff reply affidavit 49-54; exhibit F to reply.

. The nonretaliatory motive being that by offering a renewal lease with the rent increase stated, respondents were afforded all rights to which “non- *369 purchasing tenants” are entitled under the Martin Act (while petitioner still asserts respondents are not covered under the Act), and, thus, when respondents rejected the lease, petitioner was entitled to bring this holdover action.

. Documentation as to the prior proceeding is in the notice of cross motion, exhibits A-D.

. Despite assertions to the contrary (see, Leven affidavit in support 21, 22), petitioner’s offer of a renewal lease with an allegedly “not unconscionable rent increase” does not make it clear that petitioner, without conceding that respondents are “nonpurchasing tenants”, has “afforded respondents all rights to which ‘non-purchasing tenants’ are entitled under the Martin Act.” It does not appear that respondents are being treated “as if’ they were fully protected under the Martin Act since, for example, there is no contractual commitment by petitioner that even if respondents sign the offered lease, all future leases would have the rental increases so limited, or that there will never be any future commencement of an eviction proceeding prohibited by the Martin Act (i.e., a “not-for-cause” eviction), or that any successors-in-interest or assignees would be bound to afford respondents all rights of “non-purchasing tenants” under the Martin Act.

. Notice of cross motion, exhibit C.