In re Carl STEIN a/k/a/ Carl
F. Stein, Debtor.

No. 01–16112(SMB).

United States Bankruptcy Court,
S.D. New York.

Aug. 16, 2002.

Kittay & Gershfeld, P.C. (David R. Kittay, Esq., Michelle G. Gershfeld, Esq., Of Counsel), Tarrytown, NY, for trustee.

Rosenberg, Musso & Weiner, LLP (Robert J. Musso, Esq., Of Counsel), Brooklyn, NY, for Debtor.

Wander & Associates, P.C. (David H. Wander, Esq. Of Counsel), New York City, for 171 West 57th Street Operating, LLC.

## MEMORANDUM DECISION GRANTING TRUSTEE'S MOTION TO SELL OCCUPANCY RIGHTS IN RESIDENTIAL APARTMENT

STUART M. BERNSTEIN, Chief Judge.

The debtor occupied an apartment pursuant to a residential lease, but declined to purchase it in response to a non-eviction condominium conversion plan. After the plan was declared effective and his lease terminated, the debtor asserted an entitlement to continued occupancy based on rights granted to non-purchasing tenants under New York law. The trustee now seeks to sell those occupancy rights to the debtor's landlord over the debtor's objection, effectively causing the debtor to be evicted. For the reasons that follow, I conclude that the occupancy rights are property of the estate that the trustee can sell pursuant to 11 U.S.C. § 363(b). Accordingly, the trustee's sale application is approved.

### BACKGROUND

The material facts are undisputed. On or about January 23, 1997, the debtor entered into a five year residential lease, ending January 14, 2002, for Apartment 3C (the "Apartment") in a building located at 171 West 57th Street. (*See Motion by Chapter 7 Trustee for Order Authorizing Sale of Debtor's Statutory Tenancy, Pursuant to Code §§ 105(a) and 363(b), and Granting Related Relief,* dated June 11, 2002, ("*Trustee's Motion*"), Ex. C.) The initial monthly rent was $3,200.00. It in-

crease, after two years, to $3,400.00 per month, and increased again, during the fifth and final year of the lease, to $3,638.00 per month (*Id.*)

The Apartment is, by any definition, a luxury apartment. It is 2,591 square feet and includes an entrance foyer, living room, formal dining room, two bedrooms, maid's room, kitchen, three full bathrooms and eight closets. (*Id., Ex. B (Affidavit of Elliot Joseph in Support of Sale of Debtor's Statutory Tenancy,* sworn to June 4, 2002, at ¶ 4).) The "C" line apartments have a separate passenger elevator and a separate service elevator. (*Id.*) Comparable or smaller apartments in the building currently rent for as much as $9,000.00 per month. (*Id.*)

On or about December 9, 1999, a non-eviction plan was filed to convert the building to condominium ownership. (*Objections of Debtor Carl Stein to Trustee's Motion Seeking an Order Authorizing Sale of Debtor's Statutory Tenancy and Debtor's Eviction ("Objection "), Ex. B (Affidavit [of Carl Stein] in Support of Respondent's Motion for Summary Judgment Dismissing Proceeding,* sworn to Apr. 22, 2002, at ¶ 4).) The debtor did not purchase the Apartment, and on June 22, 2000, the non-eviction plan was declared effective. (*Id.,* ¶ 5.)

The debtor filed this chapter 7 petition on December 7, 2001, a few weeks before the expiration of his five year lease. As of the petition date, he owed his landlord, the 171 West 57th Street Operating, LLC (the "Landlord"), approximately $40,000.00 in unpaid rent. (*Trustee's Motion* ¶ 5.) After the lease expired and the debtor failed to quit the premises,[1] the Landlord moved for relief from the automatic stay to evict him.

The trustee did not oppose the motion, (ECF Doc. No. 8), the Court granted it, and the Landlord commenced a state court holdover proceeding against the debtor.

The debtor moved for summary judgment before the state court. He argued that despite the termination of his lease, he had the right to continued occupancy as a non-purchasing tenant under the Martin Act, N.Y. Gen. Bus. L. §§ 352–eeee (1), *et seq.* (McKinney's 1996 & West Supp.2002)("Martin Act"). The dispute was resolved through a stipulation between the debtor and the Landlord, (*Objection,* Ex. E), pursuant to which the holdover proceeding was discontinued with prejudice but without prejudice to the commencement of a non-payment proceeding. The Landlord subsequently commenced a non-payment proceeding on June 14, 2002. (*Id.,* Ex. G.)

At about the same time, the Landlord offered to buy the occupancy rights from the estate for $20,000.00, conditioned upon the Apartment being delivered vacant and free of any tenancies or other rights of occupancy. (*Trustee's Motion,* ¶ 10.) The trustee accepted the offer and filed this application under § 363(b) for approval of the proposed sale.

The debtor opposed the motion with a series of objections. First, the trustee's motion was a collateral attack on the state court stipulation that discontinued the holdover proceeding. (*Objection* ¶ 15.) Second, the trustee could not sell or disaffirm the debtor's statutory tenancy or statutory lease. (*Id.* ¶¶ 16–20.) Third, if the trustee had rejected the lease under § 365, the rejection would not have terminated the lease. (*Id.* ¶¶ 21–28.) Fourth, the

1. The debtor no longer resides at the Apartment. It is currently used as an office for Trent Investigation and Security International Corp., Inc., a company owned by his deceased mother. (*Affirmation of David Wander, Esq. In Support of Trustee's Sale Motion,* dated July 22, 2002, at ¶ 2 & Ex. A.)

trustee failed to show that the $20,000.00 offered by the Landlord was fair and reasonable. (*Id.* ¶¶ 29–30.)

## DISCUSSION

### A. Property of the Estate

 Section 363(b) authorizes the trustee to sell property of the estate, after notice and hearing, outside of the ordinary course of business. Property of the estate includes, with certain immaterial exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law normally determines the extent of the debtor's interest in property. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Canney,* 284 F.3d 362, 370 (2d Cir. 2002); *Morton v. National Bank of New York City (In re Morton),* 866 F.2d 561, 563 (2d Cir.1989). Bankruptcy law determines whether that interest is property of the estate. *In re Prudential Lines, Inc.,* 928 F.2d 565, 569 (2d Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991); *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1101 (2d Cir.1990); *In re Haedo,* 211 B.R. 149, 151 (Bankr.S.D.N.Y.1997). "Property of the estate" is broadly construed, *United States v. Whiting Pools,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *see In re Mid–Island Hosp., Inc.,* 276 F.3d 123, 128 (2d Cir.2002), in order to bring the debtor's property within the bankruptcy court's jurisdiction and the umbrella of protections granted by the Bankruptcy Code and to promote the goal of equality of distribution. 5 LAWRENCE P. KING et al., COLLIER ON BANKRUPTCY ¶ 541.01, at 541–7 (15th ed. rev.2002).

 Since the trustee can only sell property of the estate under § 363(b), the threshold question is whether the occupancy rights are property of the estate. Initially, the parties have mischaracterized the occupancy rights as "statutory." The Martin Act defines a non-purchasing tenant as "[a] person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective." Martin Act § 352–eeee(1)(e). It requires a non-eviction plan to provide, *inter alia,* that non-purchasing tenants cannot be evicted for refusing to purchase, *id.* § 352–eeee(2)(c)(ii), and if the apartment is unregulated or has been deregulated, it will "not be subject to unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy." *Id.* § 352–eeee(2)(c)(iv).

Thus, the Martin Act does not create private affirmative rights; it merely sets out what must be contained in the offering plan. *Resolution Trust Corp. v. Diamond,* 18 F.3d 111, 122 (2d Cir.)("*Diamond I* "), *vacated and remanded on other grounds,* 513 U.S. 801, 115 S.Ct. 44, 130 L.Ed.2d 5 (1994), *on remand,* 45 F.3d 665 (2d Cir.), *cert. denied,* 515 U.S. 1158, 115 S.Ct. 2609, 132 L.Ed.2d 853 (1995). It follows that the occupancy rights at issue in this case arose under the plan rather than the Martin Act, and are contractual, not statutory. *Id.* Neither party attached the plan to their submissions or cited to it, but I assume that the plan included the provisions required by the Martin Act.

Regardless of their source, the occupancy rights arose prior to the commencement of the case. The debtor originally acquired his right to occupy the Apartment under his January 1997 lease. He achieved the status of a non-purchasing tenant because the rights granted under the lease made him "a tenant entitled to possession" when the plan was declared effective in June 2000. All of the events

necessary to create the occupancy rights the trustee is now proposing to sell transpired prior to the December 2001 petition date. The rights were property of the debtor at that the time the case was commenced, and therefore, became property of the estate under § 541.[2]

At oral argument, the debtor disputed this conclusion, arguing that the occupancy rights did not arise until his leasehold tenancy terminated post-petition. In substance, he asserted that the termination of the lease, rather than the declaration of the plan's effectiveness, created the occupancy rights. The language of the Martin Act does not, however, support this position. Nevertheless, even if the occupancy rights were contingent on the termination of the lease, they still became property of the estate upon the commencement of the case.

█ In the seminal case of *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Supreme Court held that a tax loss carry-back refund claim was property within the meaning of § 70a(5) of the former bankruptcy act even though the refund could not be claimed until the tax year was subsequently closed after the petition date. The term "property," the Court noted, "has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Id.* at 379, 86 S.Ct. 511. The drafters of the Bankruptcy Code adopted this view, intending "property of the estate" to encompass contingent interests, *see* H.R.Rep. No. 595, at 175 (1977), U.S.Code Cong. & Admin.News 1977, p. 5963, and the cases decided under the Code have construed the phrase broadly to include contingent interests. *Mid–Island Hosp., Inc.*, 276 F.3d at 128; *see In re Prudential Lines, Inc.*, 928 F.2d at 572 (net loss carry forwards, which were speculative and depended on future income, were property of the estate); *In re Neuton*, 922 F.2d 1379, 1382–83 (9th Cir.1990)(debtor's interest in trust income, which was contingent on the debtor's surviving the primary beneficiary, was property of the estate).

Here, the occupancy rights were "sufficiently rooted in the pre-bankruptcy past" to qualify as property of the estate. *See Segal v. Rochelle*, 382 U.S. at 380, 86 S.Ct. 511. As noted, the debtor acquired his rights as a non-purchasing tenant prior to the petition. Even if the enjoyment of these rights had to await the passage of time and the termination of the lease, the contingency did not affect their status as property of the estate.

Furthermore, the debtor's reference during oral argument to *Patrick A. Casey, P.A. v. Hochman*, 963 F.2d 1347 (10th Cir.1992), as support for his position, is misguided. There, an individual chapter 11 debtor invented, patented and licensed a device *after* the petition date. Following the conversion to chapter 7, three creditors objected to his discharge, arguing that the debtor had failed to disclose the existence of the patent or the income. The question was whether the device, the patent and the licensing income were property of the chapter 7 estate. *Id.* at 1348–50.

The court held that these assets were not property of the estate, and hence, the debtor could not be sanctioned based on his failure to disclose them. Under Bankruptcy Code § 348(a), the property of the

---

**2.** The Court would reach the same conclusion even if it treated the occupancy right as statutory. *See Finn v. 415 Ave. Co.*, 153 F.2d 501, 502 (2d Cir.)(L.Hand, J.)(bankrupt's statutory right to possession under newly-enacted rent control laws passed to trustee), *cert. denied*, 328 U.S. 838, 66 S.Ct. 1014, 90 L.Ed. 1614 (1946).

converted, chapter 7 estate is determined as of the original chapter 11 petition date.[3] *Id.* at 1350. All of the property at issue was created after that date. In addition, while property acquired by the estate during the case also becomes property of the estate, *see* 11 U.S.C. § 541(7), the invention, the patent and the licensing agreement were acquired by the debtors, not the estate. *Id.* at 1351. Accordingly, they did not become property of the chapter 7 estate.

The case is clearly distinguishable from the present one. Here, the debtor's rights as a non-purchasing tenant arose before the commencement of his bankruptcy case. At most, their enjoyment was contingent on the termination of the lease. But there was nothing that the debtor did or had to do post-petition; the lease simply terminated with the passage of time.

### B. The Trustee's Right to Sell

■ The debtor further contends that even if the occupancy rights are property of the estate, the trustee cannot transfer

them. Since § 363(b) allows the trustee to sell property of the estate, the debtor must identify a provision of the Bankruptcy Code or other federal law that bars their sale. He points to two: Bankruptcy Code §§ 365(h) and 363(f). Neither, however, applies to the trustee's proposed transaction.

Section 365(h) deals with the effect of the rejection of an unexpired lease by a debtor-landlord. In general, it grants the non-debtor tenant the option to remain in possession throughout the term of the lease and any renewals, retain his rights under the lease, and offset any damages against the rent. *See* 11 U.S.C. § 365(h)(1)(A)(ii) & (1)(B).[4] As a result, the debtor-landlord cannot, through rejection, defeat the non-debtor tenant's rights under the lease and the rent-stabilization laws. *See Diamond I*, 18 F.3d at 122 (*dicta*); *Friarton Estates Corp. v. City of New York (In re Friarton Estates Corp.)*, 65 B.R. 586, 593 (Bankr.S.D.N.Y.1986); *but cf. Cheslock–Bakker & Assocs., Inc. v.*

3. Section 348(a) states:
 Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

4. Section 365(h) states in pertinent part:
 (1)(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—
 (i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or
 (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those

relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.
 (B) If the lessee retains its rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

*Kremer (In re Downtown Athletic Club of New York City, Inc.)*, No. M 47, 2000 WL 744126, at *4 (S.D.N.Y. June 9, 2000)(sale of building free and clear of interests pursuant to § 363(f) terminates rent stabilized tenant's rights in property).

Section 365(h) is inapplicable. To begin with, the lease has terminated, and the trustee is not seeking to assume or reject the lease for the Apartment; he is attempting to sell property of the estate under § 363(b). Thus, the effect of a theoretical rejection is immaterial. More important, the debtor is the tenant, not the landlord, and § 365(h) would not apply in any case.

Section 363(f) is also inapplicable. It restricts the trustee's ability under certain circumstances to sell property of the estate.[5] By its terms, § 363(f) applies to sales free and clear of interests "of an entity other than the estate." The only other entity with an interest in the Apartment is the Landlord. The sale is not free and clear of those interests, and the trustee has properly relied on § 363(b) rather than § 363(f). Moreover, the Landlord, as the buyer, obviously consents to the sale.

## C. The Debtor's Remaining Arguments

■ The debtor's remaining contentions also lack merit. First, he maintains that the trustee's motion is an improper collateral attack on the state court stipulation,

although he does not say why. Fortunately, we need not speculate. The stipulation was between the debtor and the Landlord, and neither the estate nor the trustee were parties to it.[6] It does not stand as an obstacle to the trustee's ability to sell the estate's rights for the benefit of the estate's creditors.

■ Second, the debtor says that the trustee failed to show that the sale price is reasonable. At the outset, the debtor's schedules (*Trustee's Motion*, Ex. A) list property worth $4,800.00 and debts in the sum of $248,500.00. He lacks equity in the Apartment, and his concern for the return to the estate is disingenuous. In any event, the estate's occupancy rights are amorphous, and it is not clear that the trustee has anything of value to sell to anyone other than the Landlord. Any other entity that buys the rights will still be subject to eviction for nonpayment of substantial past due rent. The proposed transaction makes economic sense only because the Landlord has essentially agreed to waive the rent claim as against the estate. The debtor has always been free to offer the trustee more, but has not done so.

Equally important, the trustee's ability to sell these rights may soon run out. The Landlord commenced a non-payment pro-

---

**5.** Section 363(f) states:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

**6.** Further, the stipulation would not be given collateral estoppel or *res judicata* effect because it did not specifically indicate that the parties intended it to be a final decision on the merits. *Paikoff v. Harris*, 178 Misc.2d 366, 679 N.Y.S.2d 251, 255 (N.Y.Civ.Ct.1998), *modified on other grounds*, 185 Misc.2d 372, 713 N.Y.S.2d 109 (N.Y.App. T.1999).

852

ceeding against the debtor in June 2002. Given the substantial rent arrears, eviction appears to be a foregone conclusion. And even if the estate is a necessary party to the eviction proceedings because it owns the occupancy rights, the estate cannot pay the past due rent either. Hence, it will also be subject to eviction. If the Landlord evicts the debtor (and the estate), the trustee will no longer have any occupancy rights to sell.

In the final analysis, the estate owns an unmarketable right that has a short life span. The Landlord is willing to pay $20,000.00 in lieu of going through the eviction proceeding. The debtor has not offered the trustee more, no one else is in a position to pay more, and the sale is, therefore, in the best interest of the estate.

## CONCLUSION

The trustee's application is approved, and he is authorized to sell the estate's rights of occupancy in the Apartment to the Landlord for $20,000.00. Furthermore, the debtor is directed to turn over occupancy to the trustee pursuant to 11 U.S.C. §§ 542(a) and 105(a), and the trustee is authorized to take appropriate action consistent with this decision to compel the turn over and consummate the sale.

Settle order on notice.