OPINION OF THE COURT
Bruce McM. Wright, J.
In this declaratory judgment action involving the conversion of the premises 58 West 58th Street, New York City, to a condominium, plaintiffs (the tenant association as well as individual tenants) seek a variety of relief including a judgment as to the rights of nonprimary residents to renewal leases and continued occupancy, and a judgment as to whether sales of apartments used as offices and sales of corporate residential apartments used for transient purposes count toward the 15% of all dwelling units in the building required to declare a noneviction plan effective.
Defendant 58 West 58th Street Associates (the sponsor) has counterclaimed for a judgment concerning the rights and status of nonprimary tenants in the building, as has the defendant Oskar Brecher, who is president of 58 West 58th Landmark Inc., a general partner of O & Y Landmark Associates, which is a general partner in the sponsor.
BACKGROUND
A brief history of the circumstances leading to this action is as follows:
In August, 1981, defendant sponsor submitted a prospectus (“red herring”) to the Attorney-General’s office. The red herring set forth a plan to convert to condominium ownership 168 residential apartment units and 8 commercial condominium *502 units; the plan was an eviction plan, although the sponsor reserved the right to convert it to a noneviction plan. Thereafter, the plaintiff tenant association was organized and in August, 1982, the black book was issued to the tenants. Following negotiations between the sponsor and the tenant association, the original eviction plan was converted to a noneviction plan by the first amendment, dated March 1,1983. Several amendments to the plan followed, and in February, 1984, the Attorney-General accepted for filing the fifth amendment, which declared the plan effective.
Sometime prior to the declaration of effectiveness, plaintiffs instituted this declaratoryjudgment action. After the fifth amendment was accepted for filing by the Attorney-General, plaintiffs also commenced a CPLR article 78 proceeding seeking an order adjudging the Attorney-General’s acceptance of that amendment to be arbitrary, capricious and contrary to law, and directing the Attorney-General to rescind his acceptance of the fifth amendment. That article 78 petition, a cross motion to dismiss the petitions, as well as the motions for partial summary judgment in the plenary action, are before this court for determination.
DISPOSITION
When the offering plan was accepted for filing by the Attorney-General and issued to the tenants in August, 1982, it contained an offer to nonprimary residents which gave them an opportunity to renew their leases for a one-year period with a 10% increase in the monthly rental. The complaint alleges that “upon information and belief, these corporate transient residential apartments and non-primary resident apartments were not offered renewal leases notwithstanding the terms of the offering plan.”
In April, 1983, the offering plan was amended by the second amendment, which, inter alla, withdrew this offer to nonprimary residents. Plaintiffs seek a declaration that “tenants found to be ‘non-primary residents’ pursuant to a CAB determination as well as corporate residential tenants are entitled to a one-year renewal lease at a rental increase at 10% if their lease expired between the dates of August of 1982 and April of 1983, or if they requested such a renewal during said period, as per page 51 of the blackbook (para. 69).”
Plaintiffs’ contention that these nonprimary residents are entitled to one-year renewal leases at a 10% increase simply on the basis that their leases expired between August, 1982 and April, 1983, is belied by the specific language of the offer *503 contained in the plan. The offer provided that the sponsor would renew the leases of such tenants “if the tenant signs a Lease Renewal Agreement in the form attached hereto as Exhibit M.” This offer was specifically rescinded by the second amendment dated April 5, 1983. This rescission by the sponsor cannot be said to be unlawful, as there was no initial legal requirement that such an offer be made to the tenants. Thus, those tenants who failed to accept the offer prior to the filing of the second amendment which rescinded the offer, do not have a right to a one-year renewal lease at a 10% increase. Therefore, plaintiffs’ motion for summary judgment on this cause of action is granted only to the extent that it seeks a declaration that nonprimary residents and corporate residential tenants are entitled to a one-year renewal lease at a 10% rental increase provided they accepted the offer contained on page 51 of the offering plan, prior to the rescission of this offer by the filing of the second amendment dated April 5, 1983. The remainder of the declaration sought in this cause of action must fail.
Plaintiffs also seek a declaration that a nonprimary resident not yet subject to any Conciliation and Appeals Board (CAB) determination is to be treated in the same manner as is any other rent-stabilized tenant, as well as a declaration that “all residential tenants, including corporate and CAB determined non-primary residents, have the right to remain in a non-eviction plan, albeit at a rent pursuant to the General Business Law rather than pursuant to the terms of the Rent Stabilization Law and Code.” A judgment as to these causes of action is crucial to the tenants making an informed decision as to whether or not they should purchase the shares to their apartments and to an understanding of their status should they decide not to purchase. These issues, although framed somewhat differently, are also addressed in defendants’ counterclaims and the resolution of the questions that arise must be found in the General Business Law.
Section 352-eeee of the General Business Law deals with conversions to cooperative or condominium ownership in New York City. Section 352-eeee (subd 2, par [c], els [ii], [iii], [iv]) of the General Business Law is pertinent here. Clearly, section 352-eeee (subd 2, par [c], cl [ii]) is designed to protect all nonpurchasing tenants, whether or not they are nonprimary residents, from eviction or other removal proceedings, once the conversion plan has been declared effective. In recognition of this protective right, the sponsor included in the fifth amendment to the plan, the representation that “it will not maintain eviction proceedings against tenants on the grounds that they do *504 not occupy their apartments as their primary residences (other than for those few non-primary resident eviction proceedings instituted prior to the date the Plan was declared effective on June 29, 1983).”
Section 352-eeee (subd 2, par [c], cl [ii]) of the General Business Law does extend to the landlord certain exceptions to this blanket of protection that has been placed over the nonpurchasing tenants; eviction proceedings may be commenced for “nonpayment of rent, illegal use or occupancy of the premises, refusal of reasonable access to the owner or a similar breach by the non-purchasing tenant of his obligations to the owner” (emphasis supplied). Thus, once a noneviction plan has been declared effective, nonpurchasing tenants do not gain the status of “Supertenants”, a fear expressed by defendants. However, defendants appear to be contending that not occupying an apartment as a primary residence is a breach by the tenant of his obligation to the owner, and therefore, is an exception to the nonpurchasing tenant’s protection against eviction. At the other extreme, plaintiffs appear to be arguing that once a noneviction plan has been declared effective, the owner is thereafter forever precluded from seeking a court adjudication that a tenant is a nonprimary resident.
A reading of section 352-eeee of the General Business Law as a whole and a synthesizing of the pertinent sections demonstrates that neither contention is entirely accurate. Defendants are placing strained construction upon section 352-eeee (subd 2, par [c], cl [ii]) when they argue that nonprimary residence is a substantial breach of a tenant’s obligation to a landlord, thereby entitling the landlord to evict or otherwise remove (i.e., via a holdover proceeding) such a tenant. The legislative finding which follows the statute clearly indicates the Legislature’s desire to encourage conversions while also “protecting tenants in possession who do not desire or who are unable to purchase the units in which they reside from being coerced into vacating such units * * * or into purchasing such units under the threat of imminent eviction.” (L 1982, ch 555, § 1.) While section 352-eeee (subd 2, par [c], cl [ii]) of the General Business Law speaks of the prohibition against eviction proceedings, section 352-eeee (subd 2, par [c], cl [iv]) addresses the status of nonpurchasing tenants “who reside in dwelling units with respect to which government regulation as to rentals and continued occupancy is eliminated or becomes inapplicable after the plan has been accepted for filing by the attorney general”. These tenants are not to be subjected to “unconscionable increases beyond ordinary rentals *505 for comparable apartments”. (General Business Law, § 352-eeee, subd 2, par [c], cl [iv].) Such government regulation becomes inapplicable upon an adjudication by a court that a tenant is not occupying an apartment as his primary residence (L 1983, ch 403, § 41).
Ordinarily, pursuant to the Rent Stabilization Law, an owner would not have to offer a renewal lease to an adjudicated nonprimary resident. However, the General Business Law has carved out a protection for nonprimary residents of a building that undergoes conversion pursuant to a noneviction plan; these tenants must be allowed to renew their leases, but they will not benefit from the rental caps imposed by the Rent Stabilization Law. This interpretation of the statute is consistent with the legislative intent and is the position taken by the Attorney-General with regard to the rights of nonpurchasing, adjudicated nonprimary residents.
Finally, the sponsor argues that a landlord may decide, without benefit of an adjudication by a court, that a tenant is a no.nprimary resident and therefore not entitled to a renewal lease in accordance with the Rent Stabilization Law. This contention is unpersuasive and it is hereby rejected. As mentioned above, government regulation as to rental and continued occupancy becomes inapplicable (General Business Law, § 352-eeee, subd 2, par [c], cl [iv]) upon a determination by a court of competent jurisdiction that a tenant is a nonprimary resident (L 1983, ch 403, § 41). It does not become inapplicable upon the landlord’s request to the court that the court render such a determination or upon the landlord’s unilateral decision that a tenant is not a primary resident. In fact, in their counterclaim, defendants seek a declaration as to the rights of adjudicated nonprimary tenants, thereby implicitly recognizing that non-purchasing tenants of apartments subject to the Rent Stabilization Law, Emergency Tenant Protection Act and chapter 403 of the Laws of 1983 continue to be protected by these laws until there has been a court determination of nonprimary residence.
Plaintiffs also seek a declaration that all residential tenants, including corporate and CAB-determined nonprimary residents, who were such on the date that the black book was issued, are entitled to purchase under the terms of the third amendment to the plan. That amendment gave “all tenants in occupancy as of the date of initial presentation of the plan” the exclusive right to purchase at the prices set forth in the first amendment.
In the recent case of Consolidated Edison Co. v 10 West 66th St. Corp. (61 NY2d 341, 344-345), the Court of Appeals addressed the issue of a tenant in occupancy’s right to buy: “A *506 corporate tenant which qualifies as a ‘tenant in occupancy’ under the [Rent Stabilization Code] on the date a co-operative conversion plan is presented to tenants is entitled to purchase in its own name the shares in the co-operative corporation allocated to its apartment, notwithstanding that the plan purports to limit the corporation’s rights to the transfer of its purchase option to an individual who will take in his own right, and notwithstanding that the apartment is not the ‘primary residence’ of the corporation or any of its officers.” Thus, the court’s decision that the corporate tenant in that case had the right to buy was based on the court’s finding that Consolidated Edison Company (Con Ed) had been a “tenant in occupancy” on the date of presentation of the plan. The court noted that this term of art is not defined in the General Business Law, the Rent Stabilization Law or the Rent Stabilization Code. The court looked to section 8605 of McKinney’s Unconsolidated Laws (Local Emergency Housing Rent Control Act, § 5 [L 1962, ch 21, § 1, subd 5, as amd]) for assistance in defining the term, as it had done in Wissner v 15 West 72nd St. Assoc. (58 NY2d 645). “On the basis of that provision we held in Wissner v 15 West 72nd St. Assoc. [for the reasons stated in the opinion at the Appellate Division (87 AD2d 120)], that a tenant to whom the landlord had granted three successive renewals was a Rent Stabilization Law tenant in possession entitled to purchase the shares allocated to her apartment, even though the landlord could have avoided that result by refusing a renewal lease pursuant to section 54 of the Rent Stabilization Code and seeking decontrol of the premises pursuant to section 8605 because not occupied as a primary residence. By a parity of reasoning, there being nothing in the applicable provisions that explicitly excludes a corporation from tenant in occupancy status, it follows that as the lessee of record on the critical offering date Con Ed had the exclusive right to purchase the shares allocated to apartment No. 30-H even though it would not have had that right had Park Ten succeeded, prior to presentation of its offering plan, in decontrolling the apartment and denying Con Ed a renewal lease on ‘primary residence’ grounds.” (Consolidated Edison Co. v 10 West 66th St. Corp., 61 NY2d 341, 347, supra.)
It is clear from the court’s decision in Consolidated Edison Co. (supra) that tenants who were determined by the CAB to be nonprimary residents, before the date of initial presentation of the plan, are not “tenants in occupancy” and, therefore, do not have the right to purchase the shares to their apartments pursuant to the third amendment. Accordingly, plaintiffs’ motion for summary judgment with respect to this cause of action is *507 granted only to the extent that it seeks a declaration that all tenants who were such as of the date of presentation of the plan, other than those who were CAB-determined nonprimary residents before the date of presentation, are entitled to take advantage of the terms as set forth in the third amendment.
Plaintiffs further seek a declaration that the sales of apartments used as offices do not count toward the 15% requirement of the General Business Law and that sales of corporate residential apartments that are used for transients do not count toward the said 15%.
Subsequent to the commencement of this declaratory judgment action, the Attorney-General accepted for filing the fifth amendment which declared the plan effective. As a result, plaintiffs instituted an article 78 proceeding seeking judicial review of that determination. The issue raised in the article 78 proceeding regarding which tenants should be counted toward the requisite 15% of bona fide purchasers is identical to the issue raised in this cause of action, and the article 78 petition has been referred to this court for determination. “In the exercise of its discretion, a court should not grant declaratory relief when a plaintiff has an adequate remedy at law through other administrative and judicial proceedings.” (New York Inst. for Educ. of Blind v United Federation of Teachers’ Committee for N. Y. Inst. for Educ. of Blind, 83 AD2d 390,403.) Thus, the court declines to issue a declaratory judgment with respect to this cause and has instead addressed the issues raised in the context of the article 78 petition.
In the article 78 proceeding, petitioners (plaintiffs in the plenary action) contend that the Attorney-General arbitrarily and capriciously allowed the conversion plan to be declared effective in that fewer than 15% of the dwelling units had been subscribed for by bona fide tenants in occupancy or purchasers who intended to occupy the units for their own use or for use by members of their immediate families. The Attorney-General’s position is that a corporate tenant shall be considered a bona fide tenant in occupancy, so as to be included in the requisite 15% necessary for a noneviction plan to be declared effective, where the corporation has designated a particular individual to reside in the apartment, and that individual has executed an affidavit that he or members of his family intend to reside there.
The application of the afore-mentioned standard to corporate tenants by the Attorney-General is rational and consistent with the spirit of the General Business Law, and the Attorney-General’s construction of that law must be upheld unless it is *508 irrational or unreasonable (see Matter of Bernstein v Toia, 43 NY2d 437). Accordingly, the petitioners have failed to establish that the Attorney-General acted arbitrarily or capriciously in accepting the declaration of effectiveness, and the clerk is directed to enter judgment dismissing the petition.
The motions for partial summary judgment in the declaratory judgment action are granted only to the extent indicated, and otherwise denied.