OPINION OF THE COURT
Anthony J. Fiorella, Jr., J.
Respondents move for an order dismissing the six instant holdover proceedings upon the ground that these proceedings cannot be maintained pursuant to section 352-eeee of the General Business Law (Martin Act). Petitioner cross-moves for an order of summary judgment in its favor and a finding that the condominium leases between the parties have expired and their tenancies have terminated; further, issuing judgments of possession and warrants of eviction; striking respondents’ first defense relying on General Business Law § 352-eeee and striking respondents’ second defense; striking the first affirmative defense that this action was brought in retaliation for the tenants placing violations against the premises; striking the second affirmative defense alleging that petitioner agreed to offer a one-year lease to respondents; and striking the first counterclaim alleging defects in the premises.
Factual Background
Petitioner affirmatively states it is not the condominium sponsor. Petitioner purchased certain vacant and other occupied condominium units from the condominium sponsor, Parkchester Apts. Co. Petitioner contends that there is no common ownership between the two entities nor do they share any common shareholders, partners or members. Petitioner states that the purchase and sale of the units was in fact a good-faith, arm’s length purchase for value.
Parkchester Apts. Co. purchased the complex known as Parkchester in 1968. In or about 1972, Parkchester Apts. Co. converted a portion of the complex into a condominium known as Parkchester North Condominium. The conversion took place pursuant to a noneviction plan. Sometime in 1985 Parkchester converted an additional portion of the complex into a condominium known as the Parkchester South Condominium. Said conversion was also pursuant to a noneviction plan.
Subsequent to the adoption of each plan, Parkchester Apts. Co. continued to own the condominium units which were not sold to purchasers. Some of the unsold units were occupied by *788 rent-stabilized or rent-controlled tenants. Other units were vacant at the time of adoption of the plans or became vacant thereafter and from time to time were rented pursuant to fair market leases.
On July 1, 1998, Parkchester Apts. Co. sold all of its right, title and interest in and to the balance of the unsold condominium units it owned in the Parkchester North Condominium and the Parkchester South Condominium to Parkchester Preservation Co. L.P. Said sale was to a bona fide purchaser for value. The purchase price for this transaction was in the millions of dollars. Parkchester Preservation Co. L.P. purchased the condominium units, both occupied and vacant, owned by Parkchester Apts. Co. Petitioner also contends that there is no relationship between Parkchester Preservation Co. L.P. and Parkchester Apts. Co.
The sponsor of the condominium conversion completed the north condominium in the 1970’s and the south condominium in the 1980’s and has sold 100% of its equity or other ownership interest in the individual unsold condominium units to Parkchester Preservation Co. L.P., pursuant to the deed dated July 1, 1998. None of the fair market condominium leases herein have been renewed. They have not been renewed for a number of years. However, at the settlement of prior nonpayment proceedings the fair market condominium leases were extended from year to year in writing when the nonpayment cases were settled. None of the tenants in this litigation were in physical occupancy when either the north or south condominiums were created in the 1970’s and 1980’s, respectively.
Petitioner has not commenced these proceedings because the tenants have complained of violations in their apartments. Petitioner currently owns approximately 6,000 condominium units, and has demonstrated that when violations are placed or tenants request repairs, the repairs are made as soon as possible. Allegedly the tenants have complained for the last five years that they wanted common element capital improvements to be made to the premises for violations which on repeated inspections have not been found to exist. Moreover, a decision rendered February 25, 2000 by the Honorable Marion C. Doherty concluded that there were no common systemic violations in the development.
Respondents, on the other hand, contend that in each instance they are considered “nonpurchasing tenants” as defined in General Business Law § 352-eeee and are thus protected from eviction. Further, if these respondents are not *789 so protected, they contend that they have several defenses which might entitle them to judgment, i.e., retaliatory eviction and lack of repairs. Respondents also contend that if the premises were considered a cooperative, petitioners would be purchasers of “unsold shares” to which the statute protecting tenants is clearly applicable.
Discussion
In this proceeding the paramount issue for determination is whether the respondents fall within the purview of General Business Law § 352-eeee so as to confer upon them the status of “nonpurchasing tenants.” Under the statute, the definition of a nonpurchasing tenant is as follows: “ ‘Non-purchasing tenant’. A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date” (General Business Law § 352-eeee [1] [e]). The statute further provides: “No eviction proceedings will be commenced at any time against non-purchasing tenants for failure to purchase or any other reason applicable to expiration of tenancy” (General Business Law § 352-eeee [2] [c] [ii]).
Contrary to respondents’ argument, this court concludes that the aforestated section of the Martin Act has no application to the instant matters. None of the respondents have clearly indicated that they were residents of Parkchester Apts. Co. when the plan was ultimately declared effective by the Attorney General’s Office. These apartments are condominium units which petitioner has leased to individuals for a limited period of time. Since none of these units are governmentally regulated, they are clearly free market apartments which permits the petitioner to lease them on an individual basis and for the time period agreed to by the parties.
Whether petitioner is a corporation or individual, petitioner alone has the right to govern the use, occupancy, and the individual lessee who resides in the unit for a specified, but limited, period of time.
In each of the condominium leases before the court there appears a paragraph 57 which clearly advises the lessee of what his or her status will be at the conclusion of the lease term:
“57. Tenant is Not Rent Stabilized or Rent Controlled.
“Tenant acknowledges and agrees that:
“(A) Tenant’s use and occupancy of the Unit is not governed by the Rent Stabilization Law of 1969, the Rent Stabilization *790 Code for Rent Stabilized Apartments in New York City adopted by the New York State Division of Housing and Community Renewal, the Rent and Rehabilitation Law and the Rent and Eviction Regulations promulgated thereunder; and
“(B) Tenant shall not have any of the rights granted to Tenants under those Laws, Code and Regulations, including (without limitation) restrictions on the amount of rent and rent increases, the right to renew the Lease and the right to continued occupancy after the expiration of the Lease.
“Tenant expressly understands and agrees that upon the expiration or sooner termination of this Lease in accordance with its terms, Tenant does not have the right to renew the Lease and will be required to vacate the Unit and remove all of Tenant’s furniture, furnishings and personal belongings.”
As previously stated, none of the tenants in this litigation were in physical occupancy when either the north or south condominiums were created in the 1970’s and 1980’s. Since the plans were declared effective, there is a presumption that other intervening lessees occupied these premises besides the present occupants.
Dismissal of these petitions on the grounds advanced by the respondents would endow them with a perpetual tenancy exempt from the limitations set forth in the lease itself. Clearly, the Legislature never intended that such leases remain in effect in perpetuity. (See, 58 W. 58th St. Tenant Assn. v 58 W. 58th St. Assocs., 126 Misc 2d 500.)
In support of their position respondents rely on Paikoff v Harris (178 Misc 2d 366, affd as mod 185 Misc 2d 372 [App Term, 2d Dept]). In that case, the court found that tenants who rented a cooperative apartment from the sponsor and holder of unsold shares subsequent to a noneviction conversion plan were in fact nonpurchasing tenants and thus entitled to protection under the Martin Act.
The Appellate Term affirmed the lower court’s ruling holding that the landlord could charge a reasonable rent, but that such rental increase would not be unconscionable being defined as beyond ordinary rentals for comparable apartments during the period of their occupancy. The Appellate Term clearly indicated that the requirement to offer renewal leases applies to persons who “rent from sponsors.” (Paikoff v Harris, 185 Misc 2d, supra, at 376.) In the case at bar the sponsor sold all the units in 1998 and hence the respondents herein are not nonpurchasing tenants. (See, Pembroke Sq. Assocs. v Coppola, NYLJ, May 5, *791 1999, at 32, col 6.) In that case the court limited the scope of application of General Business Law § 352-eeee solely to those tenants who rented their apartments after the effective date, but before the actual conversion. As stated earlier, the latest conversion plan in this proceeding was completed in 1985.
Respondents further rely on Libani v Concorde & Cie (269 AD2d 213). That case involved an interim lease during the condominium conversion phase. The tenants moved from a rent-stabilized apartment to a condominium unit and signed an interim lease and purchase agreement agreeing to purchase the unit when the Attorney General declared the plan effective. The lower court ruled that one of the amendments to the condominium plan represented that in the event the plan is declared effective, any nonpurchasing original tenant of a vacant unit, which these tenants were, would not be evicted for failing to purchase the vacant apartment or based on the expiration of their lease or tenancy. More importantly, the lower court further ruled that the interim lease which the tenants signed did not contain a cross default provision with their purchase agreement. Thus, the default provision contained in the purchase agreement did not constitute a default under the interim lease since no similar provision was recited in said lease.
The Appellate Division affirmed, holding that the parties’ interim lease and purchase agreement did not contain cross default provisions thus distinguishing Dash Realty Corp. v Barbosa (198 AD2d 89). The factual situation contained in the Libani case (supra) is clearly distinguishable from the facts contained herein.
In Park W. Vil. Assocs. v Nishioka (NYLJ, May 26, 1999, at 27, col 3), the court held that it was not the intention of the Legislature to provide continued occupancy protection to tenants who rent sponsor-owned cooperative or condominium units subsequent to the conversion of the building. It also held that General Business Law § 352-eeee (1) (d) unequivocally defines a purchaser under the plan as a person who owns the shares allocated to a dwelling unit or who owns such dwelling unit itself. Since the petitioner became the owner of the unit itself during the conversion,and since respondent had sublet the unit from a purchaser under the plan, i.e., petitioner, they or any other tenant in a like situation would not be construed as nonpurchasing tenant(s) who would be entitled to protection pursuant to General Business Law § 352-eeee (1) (e).
It is undisputed that condominium apartments rented to tenants pursuant to interim leases after the plan is accepted *792 for filing and prior to the plan being declared effective can be removed from the premises and have no right to continued occupancy if they fail to purchase (see, Park W. Vil. Assocs. v Leonard, NYLJ, Dec. 6, 1995, at 32, col 1 [App Term, 1st Dept]). Clearly, there is no doubt that these named respondents fail to qualify under existing case law and that they are nonpurchasing tenants entitled to protection under the aforementioned sections of the General Business Law. The factual situation of each of these respondents is distinguishable from any of the cases cited by respondents in their law brief.
None of these respondents could reasonably expect that their tenancies would be renewed in perpetuity. A commonsense approach dictates the following conclusion: respondents had full knowledge that their respective leases contained an expiration clause; further, the petitioner advised in its lease that there is no legal obligation to renew their leases. Respondents’ contemplation that somehow or someway these condominium leases could possibly fall within the purview of General Business Law § 352-eeee thus allowing them protection under the statute defies a commonsense and realistic view of the nature and understanding of their written agreements. These written leases were nothing more than yearly rentals subject to possible renewal if certain conditions had been met, and by the petitioner at will.
In granting summary judgment to petitioner as against all respondents, the court also strikes respondents’ first affirmative defense alleging that the action was brought in retaliation for the tenants placing violations against the premises. Respondents have failed to provide any substantive evidence which would lead this court to conclude that petitioner had instituted these proceedings because of prior complaints pursuant to Real Property Law § 223-b. Prior recent decisions by the Honorable Marion C. Doherty and the Honorable George M. Heymann clearly indicate that none of the named respondents herein were parties to the prior proceedings. Judge Heymann addressed the repair issue, concluding that while there were existing plumbing problems with the system and reported violations in some apartments, the housing court did not possess the authority to order wholesale replacement of the entire plumbing system for each of the respective buildings where the respondents reside. (See, Parkchester Alliance v Parkchester Apts. Co., 180 Misc 2d 548.) In a subsequent decision by the Honorable George M. Heymann (Parkchester Preservation Co. v Molina, NYLJ, June 14, 2000, at 31, col 3) the tenants moved *793 to hold petitioners in contempt for their failure to abide by the stipulations entered February 1999 concerning the correction of violations arising from 26 nonpayment proceedings. The court denied the motion. It held that renovations of the entire complex were in progress as conceded by respondents’ counsel and the court declined to order a particular priority. Although it could take several years for complete resolution of the conditions, the court said respondents had their remedies for future abatements.
In fact petitioner acknowledges that it already has undertaken the task of replacing the plumbing and electrical systems and window replacements. It is evident that while this is a substantial and costly task to accomplish, petitioner has already commenced implementation of its overhaul plan and its completion will be realized over the next couple of years. Petitioner’s undertaking to effectuate this realization is further evidence of its good faith to address the problems requiring needed attention. Thus, respondents’ arguments that these proceedings were initiated in retaliation of their filing new complaints are without merit.
Respondents’ second affirmative defense that petitioner agreed to offer respondents a one-year lease is unpersuasive and unsupported. Paragraph B of the lease agreement clearly provides that the tenant shall not have the right to continued occupancy after the expiration of or the right to renew said lease. Thus, this affirmative defense is stricken as a matter of law and construction.
Respondents’ defense in these holdover proceedings that the premises are defective is without merit and is also dismissed.
Conclusion
Based upon the foregoing, respondents’ motion to dismiss the instant proceeding is denied. The court grants petitioner’s cross motion for the entry of final judgments of possession, warrants of eviction to issue forthwith. Execution of the warrants is stayed 45 days from the date hereof. Respondents are directed to pay all outstanding use and occupancy to date.