Patterson, J.,
dissents and votes to affirm in the following memorandum: Because I disagree with the majority’s decision to permit the tenant to assert a Martin Act defense, I respectfully dissent.
In 1993, after the subject premises converted to a cooperative apartment, the landlord, Arkansas Leasing Co., commenced an illegal sublet holdover proceeding against the then tenants of record, and George and Shadia Gabriel, their undertenants. On July 23, 1993, the proceeding was settled by stipulation, which provided that the previous tenants would surrender possession and terminate their rent stabilization, and that the Gabriels would be the new tenants with a lease that would afford them no further right to renew past 1996. Despite this latter provision, the landlord entered into a new lease with the Gabriels from 1997 to 1999. Upon the expiration of that lease, the Gabri *49 els failed to vacate the premises, prompting the landlord to commence this holdover proceeding.*
At issue on this appeal is whether the Gabriels may amend their answer to assert a defense under the Martin Act. While I recognize that leave to amend the pleadings should be freely granted (CPLR 3025 [b]), I do not agree that the court below improvidently exercised its discretion in refusing to do so here (see Rose v Velletri, 202 AD2d 566 [2d Dept 1994]). The tenant waited almost two years after submitting an answer to raise the defense. Other than contending that there had been no guidance from this court on the defense, the tenant proffers no reasonable excuse for failing to assert the defense in a timely manner. General Business Law § 352-eeee was in effect more than a decade before this action commenced. Surely, the tenant was aware of it, and could have raised the defense despite the absence of any decisional law. Because the tenant’s nearly two-year delay in asserting the defense necessarily prejudiced the landlord, I would affirm the order appealed from.
Even if the tenant had timely asserted the defense, I would still affirm the order. The majority concludes that the 1997-1999 lease, which was entered into almost four years after the conversion, created a tenancy that may be protected under the Martin Act. While I recognize that our decision in Paikoff v Harris (185 Misc 2d 372 [App Term, 2d Dept 1999] [Patterson, J., on panel]) supports the majority’s conclusion, I strongly suggest that we reexamine that decision.
In Paikoff, this court held that a tenant who rents an apartment from a sponsor after a cooperative conversion qualifies as a “non-purchasing tenant” within the meaning of the Martin Act. In reaching this conclusion, we first looked to the language of General Business Law § 352-eeee (1) (e), which defines a “non-purchasing tenant,” in part, as a person “to whom a dwelling unit is rented subsequent to the effective date” of the conversion plan (emphasis added). Relying on the plain wording of the statute, we rejected the landlord’s reading of the statute as requiring the tenant to have leased the apartment prior to the closing date of the conversion (Paikoff v Harris, 185 Misc 2d at 376). The court found no “distinction between tenants in possession at the time of the conversion and those who rent from sponsors after the conversion” (id. at 377-378). This court *50 reasoned that if, in response to market conditions, a sponsor chooses to rent an apartment after a conversion, rather than sell it, then the tenants who lease the apartment should be afforded the same protections as those in possession at the time of the conversion (id. at 378).
Since Paikoff, there has been a split between the Appellate Terms in the Second and First Departments on this issue (compare Geiser v Maran, 189 Misc 2d 442 [App Term, 2d Dept 2001] [Patterson, J., on panel], with Park W. Vil. Assoc. v Nishoika, 187 Misc 2d 243 [App Term, 1st Dept 2000]). Contrary to Paikoff, the Appellate Term, First Department, refuses to extend the Martin Act protections to tenants of cooperative apartments who enter into leases years after the conversion. In Park W. Vil. Assoc. v Nishoika (187 Misc 2d 243 [2000], supra), the court rejected a tenant’s claim that he was entitled to non-eviction protection despite the fact that he entered into the lease five years after the building converted to condominium ownership. While recognizing that the statute’s plain language appears to confer such protection on tenants who enter postconversion leases, the court refused to read the statute literally. Instead, the court relied heavily on the statute’s legislative intent, which was to
“ ‘restrict . . . rents and evictions during the process of conversion from rental to cooperative or condominium status’ and to ‘protect . . . tenants in possession who do not desire or who are unable to purchase the units in which they reside from being coerced into vacating such units by reason of deterioration of services or otherwise or into purchasing such units under the threat of imminent eviction’ ” (id. at 244-245, quoting Legislative Findings, L 1982, ch 555, § 1).
Upon closer examination of the statute’s legislative history, I agree with the Appellate Term, First Department’s reasoning and would vote to affirm the judgment below.
In interpreting a statute, courts must first look to the statutory language (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). If the meaning of the statute is clear as written, then the courts generally may not look beyond that language to ascertain legislative intent. However, where a literal interpretation of a statute would produce an absurd result or would otherwise “defeat the general purpose and manifest policy intended to be promoted,” such an interpreta *51 tion should not be followed (People v Ryan, 274 NY 149, 152 [1937] [internal quotation marks omitted]; see Matter of Sutka v Conners, 73 NY2d 395, 403 [1989]). In the end, it is the Legislature’s intent, not its language, that controls (see Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]; People v Ryan, 274 NY at 152).
Applying these principles here, I conclude that the Legislature never intended to protect tenants entering into postconversion leases. General Business Law § 352-eeee (1) (e) defines a “non-purchasing tenant” as
“A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date. A person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant.”
The statute, as written, appears to confer protections to tenants who enter into leases “subsequent to” a conversion. However, to read the statute literally, as we did in Paikoff, would afford all tenants Martin Act protections, including those who enter into leases years beyond the conversion. Surely this was not the objective of the Legislature.
Indeed, the purpose of General Business Law § 352-eeee, as amended, was “to increase protections for tenants living in buildings undergoing conversion” (Governor’s Approval Mem, Bill Jacket, L 1982, ch 555). Responding to the steady increase in cooperative and condominium conversions, and the tight rental market, the Legislature amended the General Business Law to “provide adequate protection to tenants faced with losing an apartment which may have been their dwelling place for many years . . . [B]ecause of the scarcity of apartments, conversion sponsors often have an unfair bargaining position vis a vis the tenants in occupancy of a building facing conversion” (Sponsors’ Mem, Bill Jacket, L 1982, ch 555). Clearly, in amending the statute, the Legislature’s goal was to protect only those tenants who faced eviction during the conversion process, and not those, like the Gabriels, who freely entered into leases years beyond the completion of that process.
Finally, in light of the direct conflict of authority on this issue, I respectfully invite the Legislature to clarify the meaning of a nonpurchasing tenant to ensure its consistent application in all cases.
*52 Accordingly, I would affirm the order of the court below.
Pesce, P.J., and Aronin, J., concur; Patterson, J., dissents and votes to affirm in a separate memorandum.

 Although the landlord, in its petition, does not indicate whether it is a sponsor or shareholder of the cooperative, it is implicit from the briefs that the landlord is a sponsor.