**Aero Mgt. Co . v Moghadasian**

2024 NY Slip Op 34062(U)

November 20, 2024

Civil Court of the City of New York, Queens County

Docket Number: LT-312886-23/QU

Judge: Kimon C. Thermos

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS: HOUSING PART O
-----------------------------------------------------------------X
AERO MANAGEMENT CO.,

                   Petitioner

    -against-

MANSOUR MOGHADASIAN,

                   Respondent

BEHNWOOD MOGHADASIAN, BEHZAD Y.
MOGHADASIAN, AGNDAS MOGHADASIAN,
"JOHN DOE" & "JANE DOE',

           Repondents (Undertenants)

-----------------------------------------------------------------X

**Index No.: LT-312886-23/QU**


**DECISION/ ORDER**

Present: Hon. Kimon C. Thermos, JHC

Recitation, as required by CPLR 2219(a), of the papers considered in the review of the instant moving papers.

| Papers | Numbered |
|---|---|
| Petitioner's Memorandum of Law and Exhibits (NYSCEF #33-45)……...1 | |
| Respondent's Memorandum of Law and Exhibits (NYSCEF #46-47)……2 | |

Appearing for Petitioner:       Ira Cooper, Esq., Cooper, Paroff & Graham, PC

Appearing for Respondent:    Bikram Singh, Esq., Singh & Rani LLP

     This is a holdover proceeding commenced in July 2023, predicated upon the service of a ninety (90) day notice to terminate seeking possession of premises located at 105-25 64th Avenue, Apt. 3F (3rd floor), Forest Hills, NY 11375 (the "Subject Premises"). The subject building is a cooperative. Petitioner is a holder of unsold shares and the proprietary lessee of the Subject Premises.

     Petitioner brought a prior holdover proceeding against Respondents in 2019 under Index #57533/19. That case was dismissed by a Decision/Order of this Court dated May 8, 2020. *Aero*

[* 1]

*Mgt. Co. v. Moghadasian*, 2020 N.Y.Misc.LEXIS 3041 (Civ. Ct., Qns. Cty. 2020) *aff'd* 2022 N.Y.S.3d 741 (App. Term, 2nd Dept. 2022). In that prior case, the proceeding was dismissed because Petitioner failed to state in the petition that Respondent's tenancy was subject to the Martin Act. *Id.* In the instant proceeding, paragraph 8 states: "The Premises are not subject to rent control or the Rent Stabilization Law of 1969, as amended by Chapter 576, Laws of 1974, as amended by Chapter 403, Laws of 1983, by reason of the fact that this is a sponsor owned cooperative dwelling unit occupied by the respondents. This apartment is subject to General Business Law §352-eeee known as the Martin Act."

This case was initially calendared on September 19, 2023. Counsel filed a notice of appearance on September 7, 2023 and Respondent appeared by counsel on the first court date. Respondent filed an Answer[1] on November 1, 2023. The parties were unable to resolve the case in the Resolution Part so the case was transferred[2] to Part X on March 1, 2024 for assignment to a trial part. Prior to assignment to a trial part, Respondent filed an Order to Show Cause ("OSC") seeking summary judgment. That request for an OSC was denied on March 14, 2024 based on failure to seek the requested relief in the Resolution Part. The case was then assigned to Part O. Prior to the pre-trial conference date, Respondent filed a 2nd OSC seeking to amend the answer. That request for an OSC was also denied by this Court on April 25, 2024 for failure to explain why such motion was not brought in the Resolution Part. The case was scheduled for trial on July 9, 2024. On that date, the parties and the Court agreed that there were no issues of fact and that the matter could be decided as a matter of law pursuant to CPLR 409(b). The parties submitted a stipulation[3] dated July 29, 2024, listing the four questions of law that needed to be decided. The proceeding was then adjourned for the parties to each file a memorandum of law regarding the four questions of law.

Before going into theses four questions of law, it is necessary to review the facts that are undisputed by the parties. The subject building is a cooperative. Petitioner was the sponsor when the subject building was converted to co-op and is the shareholder and proprietary lessee of the Subject Premises. Respondent has resided at the Subject Premises for over 30 years[4].

---

[1] NYSCEF #9
[2] NYSCEF #10
[3] NYSCEF #32
[4] Affirmation of M. Moghadasian §2 (NYSCEF #13)

[* 2]

Respondent's tenancy is subject to the Martin Act. NY GBL §352-eeee. The last agreement between the parties was dated July 17, 2017[5]. The agreement states that it is a month-to-month lease commencing September 1, 2017, at a monthly rent of $2,000.00 per month. The agreement states that: "Landlord agrees to not raise rent for twelve (12) months." On January 14, 2019, Petitioner offered a new month-to-month agreement commencing September 1, 2018, at a monthly rent of $2,700.00[6]. That agreement also stated: "Landlord agrees to not raise rent for twelve (12) months." Parties agree that the January 14, 2019 lease was never executed by the parties. The increase in rent from the last executed agreement to the offer made on January 14, 2019 represents an increase of thirty five percent (35%).

The first question of law agreed upon by the parties states: "As Petitioner offered Respondent a lease with an increase of over 5 percent before the effective date of the Housing Stability and Tenant Protection Act of 2019 but the proceeding was commenced after the effective date of the Housing Stability and Tenant Protection Act of 2019, was Petitioner required to give notice to Respondent under RPL §226-c informing Respondent that Respondent had ninety days to sign the lease or vacate the subject premises?"

The Housing Stability and Tenant Protection Act of 2019 ("HSTPA") made numerous changes to landlord/tenant law in New York. Relevant to this proceeding was the HSTPA's amendment to RPL §226-c which states in relevant part: "Whenever a landlord intends to offer to renew the tenancy of an occupant in a residential dwelling unit with a rent increase equal to or greater than five percent above the current rent, or the landlord does not intend to renew the tenancy, the landlord shall provide written notice as required in subdivision two of this section."

As an initial matter, Petitioner argues that RPL §226-c does not apply to co-ops based on a 2021 amendment to the HSTPA. The amendment referred to by Petitioner states: "Notwithstanding paragraph (a) of this subdivision, notice shall not be required under this section to be provided by a cooperative housing corporation…to a tenant who is a dwelling unit owner or shareholder of such corporation. RPL §226-c(1)(b). Petitioner is not a cooperative housing corporation. Petitioner was the sponsor of the co-op conversion and is the holdover of unsold shares of the Subject Premises. Respondent is not a dwelling unit owner or shareholder

---

[5] NYSCEF #44
[6] NYSCEF #39

of such corporation. Respondent is a non-purchasing tenant. Therefore, the exemption provided by RPL §226-c(1)(b) does not apply in this case.

Second, Petitioner argues that the HSTPA was not in effect when the lease offer was made in January 2019, so Petitioner did not have to comply with RPL §226-c. Prior to passage of the HSTPA, upon expiration of a lease, a landlord could commence a holdover proceeding without serving a predicate notice when a written lease expired by its own terms. The HSTPA's amendment to RPL §226-c now provides that, prior to expiration of a lease, the landlord is required to provide notice if: 1) the landlord intends to renew the lease but with a rent increase of five percent or more; or 2) the landlord does not intend to renew the lease. If a landlord does not timely provide such notice under either of those circumstances, then the lease term of the prior lease extends until the notice period provided in a notice expires. Petitioner served a ninety-day notice in this proceeding well after passage of the HSTPA informing Respondent that it was terminating the tenancy because Respondent has failed to sign the renewal offer. The Court does not see how this fails to comply with RPL §226-c. Respondent argues that the notice should have apprised him that he could either sign the renewal offer or Petitioner would terminate the tenancy at the end of the ninety-day notice period. In support of this argument, Respondent cites *SH 333 LLC v. South*. 2024 N.Y.Slip.Op. 30591(U)(Civ. Ct., NY Cty. 2024). However, *South* is factually distinguishable. In *South*, the landlord offered a renewal lease with an increase of greater than five percent. When the tenant refused to sign, the landlord commenced a holdover case without serving any termination notice. The Honorable Joan Rubel dismissed the proceeding because the landlord failed to serve a predicate notice in compliance with RPL §226-c. In the instant case, Petitioner did serve a ninety-day notice that indicated it was terminating Respondent's tenancy because he failed to sign the renewal lease. This complies with the requirement of RPL §226-c[7].

The second question of law agreed upon by the parties is: "Whether the renewal lease offered by Petitioner is invalid for a lack of end date and/or specific lease term?" As noted above, the renewal offered by Petitioner on January 14, 2019 is labeled as a month-to-month lease with a commencement date of September 1, 2018. There is no end date, but the lease states

---

[7] The Court also notes that the "lease" that expired in 2018 was for a month-to-month tenancy. There was no fixed lease term. Therefore, any termination notice would have to comply with RPL 232-a, which the instant notice clearly does.

that the landlord agrees not to raise the rent for a period of twelve months. Respondent is a non-purchasing tenant under the Martin Act and is protected from being evicted for "any other reason applicable to expiration of tenancy." GBL §352-eeee(2)(c)(ii). Given that, the Court fails to see how a month-to-month lease offered to a Martin Act tenant which contains a provision preventing the landlord from increasing the rent for one year affords the tenant any less rights than a traditional one-year lease. There is nothing in the Martin Act that requires a lease offer to be for a fixed term of any duration. The only restrictions the Martin Act places on the landlord is that: 1) rent increases cannot be unconscionable; and 2) eviction must be for cause. Based on the above, the lease offer made by Petitioner was valid despite not having a specified term or end date.

The third question of law agreed upon by the parties is: "Whether Petitioner's renewal lease offer dated January 14, 2019 is invalid and/or Respondent was required to sign the lease offer as Petitioner made the renewal commencement date retroactive to September 1, 2018." Had the HSTPA been in effect at the time the lease renewal was offered, the retroactive rent increase would have been invalid under RPL §226-c because the statute indicates that if the landlord fails to serve the notice of intent to renew with an increase of greater than five percent then the tenancy continues on the same terms as the prior lease. Given that the HSTPA was not in effect at the time the renewal offer was made, the Court must look elsewhere to resolve this issue.

The Martin Act does not list failure to renew as one of the acceptable grounds for termination of the tenancy of a non-purchasing tenant. However, the Appellate Term Second Department interpreted the phrase "or a similar breach by the non-purchasing tenant of his obligations to the owner…" in the Martin Act to include a cause of action for failure or refusal to sign a renewal lease. *MMB Apartments, LLC v. Guerra*, 45 Misc.3d 132(A)(App. Term, 2nd Dept. 2014). The court in *Guerra* stated: "We note, that should it be found that tenant breached her obligation to sign a proper renewal lease with a renewal rent that is not unconscionable, she would be entitled to a 10-day post-judgment period in which to cure the breach." Id. at 3. This suggests that a renewal lease offer must meet two requirements: 1) it cannot include a renewal rent that is unconscionable; and 2) that the renewal lease be "proper." The Appellate Term in Guerra did not provide any guidance regarding what would constitute a proper renewal lease and

[* 5]

this Court is unable to find any other decisions addressing what would constitute a proper renewal lease in the context of a Martin Act tenancy.

However, the Court can look for guidance in other contexts. For example, the question of what constitutes a proper renewal lease comes up quite often in the context of a rent-stabilized tenancy. Most cases brought for failure to renew under the Rent Stabilization Code ("RSC") address the question of whether the renewal offer was based on the lawful rent amount. *See Ink 967-969 Willoughby, LLC v. Cordero*, 74 Misc.3d 128(A)(App. Term, 2nd Dept. 2022). Those cases are not instructive as the question of the proper rent amount is addressed by the fourth question submitted by the parties.

The RSC does provide specific requirements for the timing of a proper lease renewal. A landlord is required to offer a renewal lease between 90 and 150 days prior to expiration of the prior lease. 9 NYCRR §2523.5. If a landlord fails to timely offer a renewal lease, then the tenant gets to select whether the renewal will commence on either: 1) the date it would have commenced if the offer had been timely; or 2) the first rent payment date no less than 90 days after the date the offer was made. 9 NYCRR §2523.5(c)(1). In either event, the effective date of the increased rent under the renewal cannot go into effect until 90 days after the offer is made by the landlord. *Id.*

The RSC is a far more comprehensive statutory scheme than the Martin Act. It would be unfair to strictly apply the requirements of the RSC to a Martin Act tenancy when the legislature has not shown any intent to implement such a comprehensive statutory scheme in that context. *Thirty v. Grobman*, 2002 N.Y.Misc.LEXIS 585 (Civ. Ct., Kings Cty. 2002). However, in determining whether a lease offer was proper in the context of a failure to renew holdover, it is instructive to look at requirements under the RSC. The RSC requires very specific time frames to determine the timeliness of a renewal offer. It would be unfair to import those time frames. However, the RSC also provides that if the landlord fails to comply with those time frames, then the tenant gets to decide when the renewal commences. This means that a lease can only be backdated and a retroactive increase in the rental obligation be applied if the tenant chooses to accept that. *See KSB Broadway Assocs., LLC v. Sanders*, 191 Misc.2d 651 (App. Term, 1st Dept. 2002). In the instant case, Petitioner offered Respondent a lease renewal over four months after the prior lease expired and provided that the lease would commence four months in the past. If

[* 6]

this was a valid offer, the lease should have commenced after the new lease was offered or offered the tenant the option of when the lease would start.

Given the above, the Court finds that the retroactive nature of the lease offer renders it invalid. In the absence of a valid lease offer, Petitioner cannot maintain a failure to renew holdover. Since the Court has determined that the lease offer was not valid based on the third question posed by the parties, the Court does not reach the issue of whether the rent increase included in the lease offer was unconscionable under the Martin Act. Had the Court reached this issue, a hearing would have been necessary to decide the issue. Contrary to Respondent's arguments, the plain language of the Martin Act and the Appellate Term's decision in *Paikoff v. Harris* provide that whether a rent increase is unconscionable is based on a comparison of rents for comparable apartments. 185 Misc.2d 372, 377 (App. Term, 2nd Dept. 1999); GBL §352-eeee(2)(c)(viii). Petitioner submitted a few listings of what it alleges are comparable apartments[8], but the Martin Act provides specific factors that should be considered when determining whether apartments are comparable. "In determining comparability, consideration shall be given to such factors as building services, level of maintenance and operating expenses." GBL §352-eeee(2)(c)(viii). The comps provided by Petitioner only provide some of this information to allow a proper comparison as required by the Martin Act. Thus, a hearing would have been necessary if the Court reached the issue.

CPLR 409(b) provides: "The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised. The court may make any orders permitted on a motion for summary judgment." As stated above, the lease offer made by Petitioner prior to commencing this holdover for failure to renew was invalid as a matter of law. Thus, this case is ripe for summary determination. As a result, this proceeding is dismissed pursuant to CPLR 409(b).

This constitutes the Decision and Order of the Court.

Dated: November 20, 2024                        _____
Queens, New York                                Hon. Kimon C. Thermos, JHC

_____

[8] Exhibit J (NYSCEF #43)